IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WOODROW SALES, JR., #120205, | ) ) ) |
| Plaintiff, | ) ) NO. 3:23-cv-00299 |
| v. | ) ) ) JUDGE RICHARDSON |
| SUMNER COUNTY DISTRICT ATTORNEY'S OFFICE, *et al.*, | ) ) ) |
| Defendants. | ) |

MEMORANDUM OPINION

Woodrow Sales, Jr., a pretrial detainee in the custody of the Sumner County Jail in Gallatin, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against the Sumner County District Attorney's Office, Detective Steve Malach of the Hendersonville Police Department, and District Attorney General Ray Whitley, alleging violations of Plaintiff's civil and constitutional rights. (Doc. No. 1). Plaintiff also has filed an Application for Leave to Proceed In Forma Pauperis. (Doc. No. 2).

**I. APPLICATION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

To file a civil lawsuit, a plaintiff must submit the civil filing fee or an application for leave to proceed in forma pauperis. In addition, if seeking pauper status, a plaintiff must provide a certified copy of his inmate trust fund account statement for the 6-month period immediately preceding the filing of his complaint as required by 28 U.S.C. § 1915(a)(2).

While Plaintiff has filed an Application for Leave to Proceed In Forma Pauperis (Doc. No. 2), he has not submitted a certified copy of his inmate trust fund account statement. However, Plaintiff states that he has attempted to obtain the required statement by showing the Court's deficiency order

of April 28, 2023 to the jail's administration, "multiple staff members/officers," someone in inmate records, and someone in inmate supervision "with no luck." (Doc. No. 7 at 1). Plaintiff states that he has no income, no valuable property or assets of any kind, and does not own bank accounts, stocks, securities, or bonds. (Doc. No. 2 at 1, 2). Plaintiff further states that he is the father of one minor child and owes student loan repayments. (*Id*. at 2).

It appears that Plaintiff has attempted to comply with Section 1915(a)(2) and has been unable to do so for reasons outside of his control. The Court finds that, under the specific circumstances here, Plaintiff has made a good faith effort to obtain pauper status with proper documentation. *See Michael Kilpatrick v. James O'Rouke*, No. 3:16-cv-01840 (M.D. Tenn. 2016) (Sharp., J.) (Doc. No. 3 at 2) (if jail officials refuse to cooperate with plaintiff's efforts to get his inmate account statement certified, plaintiff may submit a signed statement to the court detailing his attempts to comply with the court's order). Accordingly, Plaintiff's Application (Doc. No. 2) will be granted. Should the Court discover at any point that Plaintiff has falsely represented the amount in his inmate trust account, Plaintiff's pauper status could be revoked and Plaintiff will be required to pay the full civil filing fee of $402 in one payment to proceed with this action.

## II. SCREENING OF THE COMPLAINT

A. <u>PLRA SCREENING STANDARD</u>

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary

dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

B. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

C. FACTS ALLEGED IN THE COMPLAINT

The facts in the following paragraph are taken from the complaint and, consistent with the above discussion, accepted as true for present purposes.

On February 8, 2023, "someone in Hendersonville, TN" was murdered. (Doc. No. 1 at 5). Plaintiff's car was allegedly used in the crime. Three people were arrested, one of whom implicated Plaintiff in the crime. On February 9, 2023, Plaintiff learned that there was an active warrant out for

him for first-degree murder and evading arrest. Detective Malach determined that Plaintiff should be charged with the murder "although he had no proof." (*Id*. at 5). District Attorney General Whitley, as lead prosecutor, "allow[ed] the charge to stand though he knew evidence was lacking." (*Id*. at 6). Plaintiff's bond was set at $1,000,000.

As relief, Plaintiff seeks "a reasonable bond and compensation for [his] name and reputation being slandered . . . ." (*Id*. at 6). He also seeks compensatory damages in the amount of $6 million.

D. ANALYSIS

The complaint alleges federal and state claims against District Attorney General Ray Whitley and Detective Steve Malach in their official capacities.[1] (Doc. No. 1 at 3).

1. Federal Claims

   a. *False Arrest Claim*

The Fourth Amendment to the United States Constitution requires that a law enforcement official have probable cause before making an arrest. U.S. Const. amend. IV. Typically, "[a] false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). The probable cause necessary to justify an arrest is defined as "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed

---

[1] The caption of the complaint lists the Sumner County District Attorney's Office as a defendant to this action. (Doc. No. 1 at 1). However, in the portion of the complaint titled "The Defendant(s)", Plaintiff did not list the Sumner County District Attorney's Office as a defendant. (*Id*. at 3). In any event, because Plaintiff sues District Attorney General Ray Whitley in his official capacity and because a claim against a government official in his official capacity is equivalent to a suit against the official's office, it was not necessary for Plaintiff to list the Sumner County District Attorney's Office as a separate defendant within the complaint. Had Plaintiff's claims proceeded beyond the required PLRA screening, the official-capacity claim against General Whitley would have been merged with the claim against his office. *See Thompson v. Tennessee District Attorney General's Office*, No. 3:18-cv-00502, 2018 WL 6191357, at *2 (M.D. Tenn. Nov. 27, 2018) (citation omitted).

or was committing an offense." *Radvansky v. City of Olmsted*, 496 F.3d 609, 614-15 (6th Cir. 2007) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The probable cause determination is limited to the "totality of the circumstances" known to the officer at the time of arrest, including all facts known to the officer at the time. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). A facially valid arrest warrant issued by a magistrate provides a complete defense unless the plaintiff establishes that the defendant police officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that were necessary to the finding of probable cause for the warrant. *Sykes v. Anderson*, 625 F.3d 294, 305-08 (6th Cir.2010).

Here, construed liberally, the complaint alleges that Detective Malach—who had no proof of Plaintiff's involvement in the February 8, 2023 murder—supported the warrant for Plaintiff's arrest with false statements and/or material omissions. The complaint names Detective Malach as a Defendant in his official capacity only. (*See* Doc. No. 1 at 3). When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). According to the complaint, Detective Malach is an employee of the Hendersonville Police Department. (Doc. No. 1 at 3). It appears then, that Plaintiff seeks to hold the City of Hendersonville liable for Detective Malach's conduct that allegedly constituted an unlawful arrest.

A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by the city, county, or its agent. *Monell Dep't of Social Svcs.,* 436 U.S. 658, 690-691 (1978). Municipalities are not subject to liability for the deprivation of civil rights under the doctrine of respondeat superior. *See id*. at 691. Thus, for the city of Hendersonville to be liable to Plaintiff under Section 1983, there must be a direct causal link between an official policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir.

2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978)); *Regets v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

Here, the allegations of the complaint are insufficient to state a claim for municipal liability against the city of Hendersonville under Section 1983. The complaint does not identify or describe any of the city's policies, procedures, practices, or customs relating to the incidents at issue; the complaint does not identify any particular shortcomings in training or supervision or how those shortcomings caused the alleged violations of Plaintiff's rights; and it does not identify any other previous instances of similar violations that would have put the city on notice of a problem. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp.2d 931, 944 (M.D. Tenn. 2012); *Hutchison v. Metro. Gov't of Nashville*, 685 F. Supp.2d 747, 751 (M.D. Tenn. 2010); *Johnson v. Metro. Gov't of Nashville*, No. 3:10-cv-0589, 2010 WL 3619790, at **2-3 (M.D. Tenn. Sept. 13, 2010). Thus, the complaint does not contain sufficient allegations to state a claim for municipal liability against the city of Hendersonville. Consequently, the Court finds that the complaint fails to state a municipal liability claim under Section 1983 against Detective Malach in his official capacity, which is actually a claim against the city of Hendersonville, Tennessee. That claim will be dismissed.

b. *Malicious Prosecution Claim*

To establish a Fourth Amendment claim for malicious prosecution, a plaintiff must prove four elements: (1) that a criminal prosecution was initiated against him, and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause to

support the prosecution; (3) that the plaintiff suffered a deprivation of liberty as a consequence of the legal proceeding; and (4) that the legal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d at 308-309 (6th Cir. 2010).

Here, the complaint alleges a malicious prosecution under Section 1983 against General Whitley in his official capacity only. (*See* Doc. No. 1 at 3). As noted above, an official-capacity claim is directed against the entity for which General Whitley is an agent, *see Pusey*, 11 F.3d 652, 657, which, according to the complaint, is the Sumner County District Attorney's Office. Thus, it appears that Plaintiff seeks to hold Sumner County liable for General Whitley's alleged conduct that allegedly constituted a malicious prosecution.

However, the complaint fails to allege that Plaintiff's injuries were caused by action taken pursuant to a Sumner County official policy or custom. *See Burgess*, 735 F.3d at 478. Furthermore, the complaint does not tie Sumner County to any of the allegations for which Plaintiff seeks relief. The complaint therefore does not contain sufficient allegations to state a claim for municipal liability against Sumner County. Consequently, the Court finds that the complaint fails to state a municipal liability claim under Section 1983 against General Whitley in his official capacity, which is actually a claim against Sumner County, Tennessee. That claim will be dismissed.

c. *Excessive-Bond Claim*

Plaintiff also asserts that his bond of $1,000,000 is excessive. But a Section 1983 case is the wrong vehicle to bring an excessive-bond claim. "An excessive-bond claim is not cognizable under Section 1983 because it constitutes a 'challenge to the fact or duration of the plaintiff's confinement.'" *Lucas v. Lewis*, No. 1:22-cv-741, 2023 WL 235182, at *5 (S.D. Ohio Jan. 18, 2023) (quoting *Sauers v. Montgomery Cnty. Jail*, No. 3:22-CV-00702, 2022 WL 16825169, at *3 (M.D. Tenn. Nov. 8, 2022) (citation omitted)), *report and recommendation adopted by* 2023 WL 2154680, at *2 (S.D. Ohio Feb. 22, 2023). Instead, the proper procedure for challenging the amount of bond is by a petition for habeas

corpus. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)); *Atkins v. People of State of Mich.*, 644 F.2d 543, 549 (6th Cir. 1981) (citations omitted) ("The protection against unreasonable bail pending trial has been found by the federal courts to be one of the few rights . . . whose vindication may be asserted prior to trial, either by direct appeal of an adverse interlocutory order or by a petition for habeas corpus."))). Thus, Petitioner's excessive-bond claims must be dismissed without prejudice to refiling in a habeas corpus petition followed by the required exhaustion of state-court remedies.[2]

2. State Law Claims

The complaint also alleges state law claims of slander. (Doc. No. 1 at 6). Title 28 U.S.C. § 1367(a) provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .

*Id*. The district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it ha[d] original jurisdiction . . . ." *Id*. at § (c)(3).

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction to hear any state law claims set forth in the complaint. Consequently, any state law claims asserted in the complaint will be dismissed without prejudice, to be filed, if Plaintiff so chooses, in a Tennessee state court.

---

[2] The Court notes that state pretrial detainees, like Plaintiff, pursue habeas corpus relief in federal court under 28 U.S.C. § 2241. *Christian v. Wellington*, 739 F.3d 294, 297 (6th Cir. 2014). Before presenting an excessive-bond claim for federal review through a Section 2241 habeas petition, however, a pretrial detainee "must exhaust all available state court remedies." *Phillips v. Ct. of Common Pleas, Hamilton Cnty., Ohio*, 668 F.3d 804, 809 (6th Cir. 2012) (citing *Klein v. Leis*, 548 F.3d 425, 429 n.2 (6th Cir. 2008)).

## III. CONCLUSION

Plaintiff's Application to Proceed In Forma Pauperis (Doc. No. 2) will be granted.

Having screened the complaint pursuant to the PRLA, the Court finds that the complaint fails to state colorable false arrest and malicious prosecution claims under Section 1983 against the two named Defendants in their respective official capacities (the only capacities in which they are sued). Those claims will be dismissed.

Plaintiff's excessive-bond claims will be dismissed without prejudice.

The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law slander claims. Those claims also will be dismissed without prejudice.

An appropriate Order will be entered.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE